UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Samuel Stamping Technologies, LLC,         Case No. 3:20-cv-1011

       Plaintiff,

   v.        MEMORANDUM OPINION
       AND ORDER

Therma-Tru Corp.,

       Defendant.

## I.  INTRODUCTION

Plaintiff Samuel Stamping Technologies, LLC ("SST"), asserts three causes of action for patent infringement against Defendant Therma-Tru Corp, alleging violations of 35 U.S.C. § 271(a). (Doc. No. 1). Therma-Tru previously challenged SST's patents as unenforceable because they were indefinite. I set the case for a jury trial on that limited issue, (Doc. No. 47), and the jury returned verdicts in favor of SST. (Doc. Nos. 70, 71, and 72). Pursuant to my order, the parties have filed supplemental claim construction briefs, as well as briefs in response to the opposing side's claim construction brief. (Doc. Nos. 101, 102, 103, and 104).

## II.  STANDARD

In construing terms contained in a patent claim, a court must give those terms their "ordinary and customary meaning," which is the meaning "the term would have to a person of ordinary skill in the art in question at the time of the invention . . . ." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). The "primary resources" for determining that meaning are the claims, the remaining portions of the patent, and the patent's prosecution history – "together, the

intrinsic evidence of the meaning of the claims." *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1329 (Fed. Cir. 2008) (citing *Phillips*, 415 F.3d at 1318).

"A design patent protects the nonfunctional aspects of an ornamental design as shown in the patent." *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995) (citing *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed. Cir. 1993)). While "trial courts have a duty to conduct claim construction in design patent cases, as in utility patent cases, . . . the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent by providing a detailed verbal description of the claimed design." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (citing *Elmer*, 67 F.3d at 1577). *See also Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016) ("Words cannot easily describe ornamental designs. . . . [A design] claim 'is better represented by the photographic illustration than it could be by any description, and a description would probably not be intelligible without the illustration[.]'") (*quoting Dobson v. Dornan*, 118 U.S. 10, 14 (1886)).

### III. DISCUSSION

SST holds three patents for ornamental door skin designs: U.S. Design Patent No. D557,427 (the "D427 patent"); U.S. Design Patent No. D625,023 (the "D023 patent"); and U.S. Design Patent No. D635,276 (the "D276 patent") (collectively, the "SST Patents"). (Doc. No. 1 at 3). It alleges Therma-Tru produces doors with door skins that infringe upon the SST patents. (*Id.* at 4). The parties propose competing definitions to be adopted during the claim construction process:

|  | Samuel Stamping Technologies | Therma-Tru Corp. |
|---|---|---|
| D427 Patent | "An ornamental design for a high definition two panel door skin, as shown and described. The ornamental design includes, among other elements, a recessed profile, the shape of which is shown in Figures 5 and 6." | "An ornamental design for a high definition two panel door skin as shown and described in the '427 Patent, including the specific shape of the door skin recessed profile (the complex pattern of convex, concave, linear, and arcuate regions of the profile) shown in |

2

| | | Figures 5-6. The size and shape of the door skin perimeter and the size, shape, and placement of the panels are purely functional features dictated by industry standards and practice." |
|---|---|---|
| D023 Patent | "An ornamental design for a high definition door skin with soft arch, as shown and described. The ornamental design includes, among other elements, a recessed profile, the shape of which is shown in Figures 6–8." | "An ornamental design for a high definition door skin as shown and described in the '023 Patent, including the specific shape of the door skin recessed profile (the complex pattern of convex, concave, linear, and arcuate regions of the profile) as shown in Figures 6-8. The size and shape of the door skin perimeter and the size, shape, and placement of the panels are purely functional features dictated by industry standards and practice." |
| D276 Patent | "An ornamental design for a high definition door skin with soft arch and V-grooves, as shown and described. The ornamental design includes, among other elements, a recessed profile, the shape of which is shown in Figures 6–8, and V-grooves, the shape of which is shown in Figures 9–10." | "An ornamental design for a high definition two panel door skin as shown and described in the D'276 Patent, including the specific shape of the door skin recessed profile (the complex pattern of convex, concave, linear, and arcuate regions of the profile) as shown in Figures 6-8, and the specific shape of the V-grooves (the two claimed angled planar elements) shown in Figures 9-10. The width of the recessed profile is "approximately the same width as each space created between the side [recessed profile] and adjacent grooves, and the width of each space created between adjacent grooves." The size and shape of the door skin perimeter and the size, shape, and placement of the panels are purely functional features dictated by industry standards and practice." |

(Doc. No. 101 at 2; Doc. No. 102 at 13-14).

The Federal Circuit has held that "[w]here a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122

3

F.3d 1396, 1405 (Fed. Cir. 1997) (citation omitted). I adopt the following descriptions of the claimed designs to supplement the illustrations contained in the patents:

- <u>D427 Patent</u> – An ornamental design for a high-definition two panel door skin, as shown and described. The ornamental design includes a recessed profile, the shape of which is shown in Figures 5 and 6, and the size, shape, and placement of the door panels.
- <u>D023 Patent</u> – An ornamental design for a high-definition door skin with a soft arch, as shown and described. The ornamental design includes a recessed profile, the shape of which is shown in Figures 6 through 8, and the size, shape, and placement of the door panels.

- <u>D476 Patent</u> – An ornamental design for a high-definition door skin with a soft arch and V-grooves, as shown and described. The ornamental design includes a recessed profile, the shape of which is shown in Figures 6 through 8, and V-grooves, the shape of which is shown in Figures 9 and 10. The ornamental design also includes the size, shape, and placement of the door panels.

Therma-Tru raises a number of objections to SST's proposed claim construction for all three patents, which are substantially similar to the claim constructions I have adopted.

Therma-Tru argues that "the *en banc* Federal Circuit outlined four areas where the Court should issue claim construction guidance on design patent claims." (*Id.* at 22) (citing *Egyptian Goddess*, 543 F.3d at 680). But Therma-Tru stretches the Federal Circuit's observations too far. As I noted above, the *Egyptian Goddess* court first stated, "[g]iven the recognized difficulties entailed in trying to describe a design in words, the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." *Egyptian Goddess*, 543 F.3d at 679.

The court then held it was not reversible error for a trial court "to issue a relatively detailed claim construction" of a design patent. *Id.* Finally, after again noting "it may be unwise to attempt a full description of the claimed design," the court identified four areas where additional written detail may be helpful: (1) identifying "various features of the claimed design as they relate to the accused design and the prior art"; (2) "the role of particular conventions in design patent drafting"; (3) "assessing and describing the effect of any representations that may have been made in the course of

4

the prosecution history"; and (4) "distinguishing between those features of claimed design that are ornamental and those that are purely functional." *Id.* at 680 (citations omitted). Importantly, the *Egyptian Goddess* court did not hold that a court <u>must</u> address these issues during claim construction.

First, Therma-Tru argues that the claim constructions must account for the prior art. (*See* Doc. No. 102 at 24-25, 27-28). But while Therma-Tru analyzes similarities between SST's patented designs and earlier patented door designs, (*see, e.g., id.* at 29-31), it fails to explain how the prior art limits the scope of the claimed designs. Nor does it offer any suggestion as to how the prior art might be verbally described, and the claimed designs distinguished, in its proposed claim constructions. (*See id.* at 13-14). I conclude that an attempt to verbally describe the differences between SST's patented designs and the prior art would be unduly confusing for a jury and reject this objection to SST's proposed claim construction.

Therma-Tru next contends the claim constructions must account for statements the applicants made during the prosecution of the patent applications. (*Id.* at 27-28). But Therma-Tru does not explain how any statements made during the application process would assist the factfinder in assessing infringement. By way of example, Therma-Tru quotes from the prosecution history of the D276 Patent: "'[T]he embossed edges have a specific shape, as shown best in Figures 6 through 8, and such embossment is clearly different than the embossment disclosed in [the] Meyer [prior art].'" (*Id.* at 16) (quoting Doc. No. 22-11 at 36) (first alteration and emphasis by Therma-Tru). But SST's proposed construction for this Patent specifically references Figures 6 through 8, and Therma-Tru fails to explain how the Meyer distinction would assist the factfinder, much less propose language to draw this distinction. I reject this objection.

Finally, Therma-Tru argues the claimed design should not include the size, shape, and placement of the door panels because "the two panel layout is old and any differences in panel size, margins, and the like are driven by function." (Doc. No. 102 at 31). It further argues that if the

5

upper panels on any of the three doors are cut out to accommodate a doorlite, as contemplated by SST's design, those panels must be "confined to the size and shape of the industry standard doorlites." (*Id.* at 33). Therefore, Therma-Tru concludes, the size and shape of the panels are merely functional. (*Id.*).

But Therma-Tru's argument overlooks the actual claimed design, in which the panels are intended to remain in place. And it fails to explain how the fact that the panels may be removed and replaced with a doorlite renders the size, shape, and placement of the door panels as functional features rather than part of the ornamental design. Importantly, "design patents protect the overall ornamentation of a design, not an aggregation of separable elements." *Sport Dimension*, 820 F.3d at 1322. For this reason, a court may not "entirely eliminate a structural element from the claimed ornamental design," even where the element "also serve[s] a functional purpose." *Id.* at 1321.

Therma-Tru's argument is not persuasive, and I reject its proposed exclusion of these features from the claimed design.

## IV. CONCLUSION

For the reasons stated above, I reject Therma-Tru's objections and adopt the claim constructions identified above.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge